### ELI BEACH *vs.* SHADRACH MANCHESTER.

The statute of 1845, *c.* 208, does not extend or enlarge the power of a married woman to make a will.

METCALF, J.   This is an appeal from a decree of the judge of probate for the county of Hampden, allowing the last will of Achsa Beach.   The reason assigned for the appeal is, that when the will was made, the testatrix was the wife of the appellant, " and had no authority in law to make such will, without his consent." That she was the appellant's wife, and that he gave no consent to her making of the will, are facts admitted by the appellee; and it is admitted by the appellant, that the property, which the testatrix undertook to dispose of by her will, was secured to her sole and separate use by an ante-nuptial contract made by him and her on the 26th of June, 1845.   This contract is set forth at large in 11 Met. 349, 350.   The appellant also admits that the testatrix, after her intermarriage with him, to wit, on the 30th of September, 1845, by her deed duly executed, conveyed the aforesaid property to Edward L. Tinker, (whom this court had previously appointed to be her trustee, pursuant to the

provisions of *St.* 1845, *c.* 208,) to be held by him on certain trusts declared in said deed. See 11 Met. 351. It is not necessary that the terms of the ante-nuptial contract, or of the subsequent conveyance to Tinker, the trustee, should be here recited. It is sufficient for the decision of this question, that in neither of those instruments was any power reserved to the testatrix to dispose of the said property by will, or by any testamentary paper in the nature of a will. So that the instrument now in question cannot have any legal effect, either as a will, or as the execution of a power, unless the testatrix was authorized, by statute, to dispose of her separate property by will. *Osgood* v. *Breed*, 12 Mass. 525 ; *Newburyport Bank* v. *Stone*, 13 Pick. 420.

The question in this case, therefore, depends solely on the construction of *St.* 1845, *c.* 208, §§ 5, 7, on which alone the appellee relies. By § 5, " whenever any property shall be secured to the sole and separate use of a married woman, or conveyed, devised, or bequeathed to her, pursuant to any of the provisions hereinbefore contained," (in the first four sections,) " such woman shall, in respect to all such property, have the same rights and powers, and be entitled to the same remedies, in her own name, at law and in equity, and be liable to be sued in law and in equity, upon any contract by her made, or any wrong by her done, in respect to such property, and also upon any contract by her made, or wrong by her done, before her marriage, in the same manner, and with the same effect, as if she were unmarried ; and all such property may be attached in any such suit, and may be taken on execution, as if she held the same, being unmarried. And the original writ, by which any such action at law shall be commenced, shall contain the proper averments, to show that such action is brought upon some contract made, or wrong done, in respect to property held by such married woman to her separate use, or is brought upon some contract by her made, or wrong by her done, before her marriage ; and such averments shall be traversable."

By § 7, " if any married woman, holding property to her

separate use, by virtue of this act, shall die intestate, all her right and interest in any personal property, thus held, shall vest in her husband, unless other provision is made in relation thereto by the terms of the contracts or conveyances hereinbefore mentioned," &c.

The appellee contends, that § 5 gave to the testatrix all the rights and powers of a feme sole, in respect to her separate property. But the court are of opinion, that the rights, powers and remedies, which are given, by that section, to a married woman, and which are to have the same effect as if she were unmarried, relate only to actions at law, or suits in equity, to be brought by her in respect to her separate property. The sole purpose of the section seems to be, to enable married women, who have separate property, to bring actions in their own name only, and to render them liable to be sued in their own name only, in respect to such property, in the same manner, and with the same effect, as if they were unmarried. No further power is there given, or was intended to be given.

It was argued for the appellee, that the provision in § 7, as to the vesting of the wife's separate property in her husband, if she "shall die intestate," necessarily implies that she has legal authority to dispose of such property by will. Whether such would be the necessary implication, if there were no previous statute on the subject, we need not now inquire. For by *St.* 1842, *c.* 74, every married woman was authorized to "devise and dispose of, by last will and testament duly executed, any property held in her own right, and separate from that of her husband;" such will, however, not to be valid, unless the husband, "if of sound mind and competent to act, shall give his assent thereto, expressed in writing, and indorsed thereon." We cannot, therefore, infer from *St.* 1845, *c.* 208, § 7, that any power to make a will was thereby given or recognized by the legislature, beyond the qualified power conferred by the previous statute.

The decree of the judge of probate must be reversed, and

the case be remitted to him for further proceedings in the settlement of the estate of the testatrix.

*W. G. Bates,* for the appellant.

*P. Boise,* for the appellee.